IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

NANCY ANN ROGERS, *et al.*,
Appellants,

v.  Civil No. 3:20cv380 (DJN)

PETER J. BARRETT,
Appellee.

**MEMORANDUM OPINION**

On September 16, 2019, Appellee Peter J. Barrett ("Barrett"), in his capacity as trustee of the bankruptcy estates of Oliver Lawrence ("O. Lawrence") and Chamberlayne Auto Sales & Repair, Inc. ("CASR"), brought an adversary proceeding before the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") against Appellant Nancy Ann Rogers and her law firm, Nancy A. Rogers, P.C. (collectively, "Rogers"), substitute trustee under the deeds of trust on O. Lawrence and CASR's business property, asserting causes of action for breach of fiduciary duty, violation of the Bankruptcy Court's automatic stay and civil conspiracy. On March 30, 2020, Barrett filed a motion for partial summary judgment on the fiduciary duty and bankruptcy stay counts. The Bankruptcy Court granted Barrett's motion on May 14, 2020, finding Barrett entitled to judgment as a matter of law on both counts.

This matter now comes before the Court on Rogers' Motion for Leave to Appeal (ECF No. 1), moving pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8004 and 28 U.S.C. § 158(a)(3) for leave to file an appeal of the Bankruptcy Court's May 14, 2020 Order. For the reasons set forth below, the Court DENIES Rogers' Motion (ECF No. 1).

## I. BACKGROUND

For the purposes of background only, the Court recites the following facts, borrowing from the Bankruptcy Court's recitation of the facts for ease of reference.

### A. Disputed Foreclosure

Before O. Lawrence and CASR filed for bankruptcy, Lawrence obtained two loans from the predecessor-in-interest to Atlantic Union Bank ("Atlantic Union"). *Barrett v. Rogers (In re Lawrence)*, 2020 WL 2500628, at *2 (Bankr. E.D. Va. May 14, 2020). The loans were evidenced by two promissory notes (the "Notes") and secured by deeds of trust (the "Deeds of Trust") on real property owned by O. Lawrence, where CASR operated its business (the "Property"). *Id.* On December 13, 2013, CASR purchased the loans from Atlantic Union pursuant to a purchase and sale agreement. *Id.* The Notes were thereafter endorsed as payable to Kim Lawrence ("K. Lawrence"), O. Lawrence's spouse. *Id.*

On December 15, 2016, K. Lawrence appointed Rogers as substitute trustee under the Deeds of Trust. *Id.* at *3. After her appointment, Rogers began acting under the direction of O. Lawrence to foreclose on the Property, even though K. Lawrence held the Notes. *Id.* Pursuant to the Deeds of Trust, on January 6, 2017, Rogers prepared and mailed a notice of the foreclosure (the "Mailed Notice") to O. Lawrence at an address different from the address listed on the Deeds. *Id.* The Mailed Notice also incorrectly stated that the foreclosure auction would occur on January 24, 2017. *Id.* The United States Postal Service thereafter returned the Mailed Notice to Rogers as undeliverable. *Id.*

Separately from the Mailed Notice, Rogers also caused to be published in *The Richmond Times-Dispatch* a notice of the proposed foreclosure auction (the "Publication Notice"). *Id.* The Publication Notice stated that the foreclosure auction would occur on January 23, 2017, at 2:10

2

p.m., a day before the date listed in the Mailed Notice. *Id.* Despite the discrepancy, on January 23, 2017, Rogers proceeded with the foreclosure auction of the Property. *Id.* at *4. During the auction, Rogers accepted the previously submitted oral bid of $225,000 from K. Lawrence, and no other bids were received. *Id.* At the time, the tax assessed value of the Property was $238,000. *Id.* On January 24, 2017, Rogers and K. Lawrence executed a substitute trustee's deed (the "Trustee's Deed") that conveyed the Property from O. Lawrence to K. Lawrence. *Id.* K. Lawrence thereafter sold the Property to a third party for $440,000. *Id.*

### B. Bankruptcy Proceedings

On the same day that Rogers and K. Lawrence executed the Trustee's Deed — January 24, 2017 — O. Lawrence and CASR filed voluntary petitions for relief under Chapters 7 and 13 of Title 11 of the United States Code (the "Bankruptcy Code"). *Id.* at *2. The Bankruptcy Court subsequently converted O. Lawrence's bankruptcy case from a Chapter 13 to Chapter 7 proceeding and appointed Barrett as trustee of both O. Lawrence and CASR's bankruptcy estates. *Id.*

In his capacity as trustee, on September 16, 2019, Barrett brought an adversary proceeding against Rogers, alleging that Rogers breached her fiduciary duties as substitute trustee, violated the Bankruptcy Court's automatic stay on the conveyance of bankruptcy estate property and acted in a civil conspiracy with O. Lawrence and K. Lawrence. *Id.* at *4. Specifically, in Count One of the adversary complaint, Barrett alleged that the foreclosure sale of the Property proved invalid, because Rogers failed to comply with her obligations under the Deeds of Trust to provide proper notice of the foreclosure auction, meaning the Property remained part of O. Lawrence's bankruptcy estate. *Id.* In Count Two, Barrett alleged that, because the Property remained part of O. Lawrence's estate, when Rogers recorded the Trustee's

Deed conveying the Property, Rogers violated the automatic stay on the conveyance of property in O. Lawrence's bankruptcy estate that took effect as soon as O. Lawrence filed his bankruptcy petition. *Id.* And, in Count Three, Barrett alleged that Rogers conspired with the Lawrences to complete the foreclosure sale of the Property before O. Lawrence and CASR filed for bankruptcy to avoid creditor claims against the Property. *Id.*

On March 30, 2020, Barrett moved for partial summary judgment on Counts One and Two of the adversary complaint. And, on May 14, 2020, the Bankruptcy Court issued its Memorandum Opinion and Order granting Barrett's motion, which Rogers now appeals.

### C.     The Bankruptcy Court's Opinion

In its May 14, 2020 Opinion, the Bankruptcy Court found the foreclosure sale of the Property defective, because Rogers failed to provide proper notice of the foreclosure auction. *Barrett*, 2020 WL 2500628 at *5-6. Although the Bankruptcy Court found that Rogers' decision to mail the Mailed Notice to O. Lawrence's last known address instead of the address listed in the Deeds of Trust complied with Virginia law, the Court held that the Deeds of Trust provided additional requirements regarding the proper mailing of the Notice with which Rogers was obligated to comply. *Id.* Because Rogers sent the Mailed Notice to an address other than that provided in the Deeds of Trust, and because the Deeds of Trust required that all notices be mailed to the address provided, the Bankruptcy Court held that Rogers failed to provide proper notice of the foreclosure auction. *Id.* at *6.

The Bankruptcy Court also found defects in the auction date listed in the Mailed Notice. *Id.* Specifically, because the Mailed Notice contained an auction date different from the actual date, as listed in the Publication Notice, the Court held that the Mailed Notice contained a material defect that rendered the entire foreclosure sale defective. *Id.* And the Bankruptcy Court

held that Rogers also failed to comply with state law when Rogers, by her own admission, acted at the behest of O. Lawrence, the debtor, and not K. Lawrence, the beneficiary, when initiating the foreclosure on the Property. *Id.* (citing Va. Code § 55.1-320(7)). In so holding, the Bankruptcy Court rejected Rogers' post-answer affirmation that she had in fact acted under K. Lawrence's direction, finding this affirmation "belied not only by [Rogers'] admissions in the Answer," but also Rogers' answers to Barrett's interrogatories, in which Rogers confirmed that she had received instructions to initiate the foreclosure from O. Lawrence, not K. Lawrence. *Id.* at *7.

Based on these defects, the Bankruptcy Court found the foreclosure sale invalid. *Id.* Because the foreclosure sale proved invalid, the Court concluded that O. Lawrence maintained an equitable interest in the Property and that the automatic stay against "any act to obtain possession of property of the [bankruptcy] estate" therefore applied to the Property. *Id.* (citing 11 U.S.C. § 362(a)(3)). Because Rogers recorded the Trustee's Deed on February 23, 2017, almost a month after O. Lawrence filed his bankruptcy petition, and because Rogers knew at that time that O. Lawrence had filed the petition, the Bankruptcy Court held that Rogers "willfully" violated the automatic stay, as defined in the Bankruptcy Code, even if Rogers believed that the foreclosure sale was valid. *Id.* at *8.

Based on the same defects, the Bankruptcy Court held that Rogers also breached her fiduciary duties of good faith, fair dealing and impartiality by foreclosing on the Property without first satisfying the conditions precedent to foreclosure under the Deeds of Trust and state law. *Id.* at *8-9. The Bankruptcy Court concluded that on the undisputed facts presented, "at best, Rogers was willfully blind to a scheme to place the Property outside the reach of CASR's and O. Lawrence's creditors; at worst, Rogers was complicit in a scheme to defraud, hinder, or

delay creditors." *Id.* at *9. Therefore, the Bankruptcy Court granted Barrett's motion for partial summary judgment as to both Counts One and Two. *Id.* at *10.

### D.  Rogers' Motion for Leave to Appeal

On May 29, 2020, Rogers filed her instant Motion for Leave to Appeal, moving pursuant to Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3) for leave to appeal the Bankruptcy Court's May 14, 2020 Opinion and Order granting Barrett's motion for partial summary judgment. (Defs.' Mot. for Leave to Appeal ("Rogers Mot.") (ECF No. 1) at 1.) In support of her Motion, Rogers presents several questions for appeal, namely: (1) whether a substitute trustee may be held strictly liable for breach of fiduciary duty due to her failure to strictly conform to the notice requirements contained in a deed of trust; (2) whether a substitute trustee's sale of real property can be declared invalid due to alleged notice defects despite Virginia Code § 55.1-321(C), which provides that noncompliance with the notice requirements of that section shall not affect the validity of a foreclosure sale; (3) whether the Bankruptcy Court erred in granting summary judgment on the issue of whether Rogers took direction solely from O. Lawrence, despite the sworn testimony of K. Lawrence and Rogers' sworn statement that K. Lawrence directed Rogers to proceed with the foreclosure; (4) whether Rogers could be held liable for breach of her fiduciary duties for failure to provide proper notice, even though Virginia Code § 55.1-321(A) provides that "[t]he inadvertent failure to give notice as required by this subsection shall not impose liability on either the trustee or the secured party;" (5) whether Rogers could be held liable for breach of her fiduciary duties for an error in the Mailed Notice even though Rogers also mailed a copy of the Publication Notice with the correct auction date; (6) whether the Bankruptcy Court could, without a trial, rebut the statutory presumption that Rogers complied with the notice requirements in the Deeds of Trust; (7) whether Rogers could be held liable for

6

breach of her fiduciary duties for sending the Mailed Notice to O. Lawrence's last known address instead of the address listed in the Deeds of Trust; and, (8) whether the Bankruptcy Court could award punitive damages against Rogers. (Rogers Mot. at 5-7.)

Rogers contends that these issues are ripe for appeal, because the Bankruptcy Court's May 14, 2020 Order constituted a final order for all practical purposes. (Rogers Mot. at 8.) Rogers argues that because bankruptcy proceedings often involve multiple discrete disputes, the Court need only determine whether the Order proves final as a practical matter. (Rogers Mot. at 8.) Because the Bankruptcy Court's Order granted partial summary judgment as to Rogers' liability, Rogers maintains that the Order "effectively finally adjudicated the claims against [her] such that the [O]rder can and should be accepted as a final order for appeal by the district court." (Rogers Mot. at 8.)

Alternatively, should the Court determine that the May 14, 2020 Order does not constitute a final order, Rogers contends that the issues presented are nonetheless ripe for interlocutory appeal, because: (1) the issues presented constitute pure questions of law that would, as a legal or practical matter, completely dispose of the adversary proceeding, because such issues go to the heart of Rogers' legal duties and Barrett's right to relief; (2) there exists substantial ground for differences of opinion on the issues presented, because of contrary statutes and caselaw; and, (3) resolution of the issues presented now would materially advance the termination of the adversary proceeding, because Rogers will no doubt raise the same issues in a later appeal anyway. (Rogers Mot. at 9-12.)

Barrett filed his Response to Rogers' Motion on June 10, 2020, (Resp. of Barrett, Tr., in Opp. to Defs.' Mot. for Leave to Appeal ("Barrett Resp.") (ECF No. 3)), and Rogers elected not

to file a Reply within the time allowed under the Local Rules, rendering Rogers' Motion now ripe for review.

As a threshold matter, the Court finds that the Bankruptcy Court's May 14, 2020 Order does not constitute a final order subject to appeal as of right under 28 U.S.C. 158(a)(1), because although an order addressing a contested issue within a larger bankruptcy proceeding may be considered final in a "more pragmatic and less technical" manner, *In re Cottrell*, 876 F.2d 540, 541 (6th Cir. 1989) (internal quotations and citations omitted), Rogers seeks to appeal an order within an adversary proceeding, which requires satisfaction of more stringent requirements of finality, *In re Dwyer*, 244 B.R. 426, 429 (B.A.P. 8th Cir. 2000). Specifically, pursuant to Federal Rule of Civil Procedure 54(b), as incorporated by Bankruptcy Rule 7054(a), in actions involving more than one claim for relief, "an order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action . . . and may be revised at any time before the entry of a judgment." Because the May 14, 2020 Order adjudicated only some of Barrett's claims against Rogers, the Order does not constitute a final order. Therefore, Rogers must rely on the interlocutory appeal requirements of § 158(a)(3) to obtain leave of this Court before appealing the Bankruptcy Court's Order.

## II.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a)(3), "district courts of the United States . . . have jurisdiction to hear appeals . . . with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Federal Rule of Bankruptcy Procedure 8004 provides that a party may "appeal from an interlocutory order or decree of a bankruptcy court under 28 U.S.C. § 158(a)(3) . . . [by] fil[ing] with the bankruptcy clerk a notice of appeal as prescribed by Rule

8

8003(a)." Fed. R. Bankr. P. 8004(a). Such notice must "be accompanied by a motion for leave to appeal." Fed. R. Bankr. P. 8004(a)(2). "When deciding whether to grant leave to appeal an interlocutory order or decree of a bankruptcy court, the district court may employ an analysis similar to that applied when certifying interlocutory review by the circuit court of appeals under 28 U.S.C. § 1292(b)." *KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd.*, 250 B.R. 74, 78 (E.D. Va. 2000) (citing *Atl. Textile Grp., Inc. v. Neal*, 191 B.R. 652, 653 (E.D. Va. 1996)).

To that end, § 1292(b) provides that a district judge may certify for interlocutory appeal any "order not otherwise appealable under this section" when the judge is "of the opinion that such order [1] involves a controlling question of law [2] as to which there is a substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." "[B]ecause § 1292(b) is contrary to the general rule that appeals may be had only after a final judgment, it should be used sparingly and its requirements must be strictly construed." *Difelice v. U.S. Airways, Inc.*, 404 F. Supp. 2d 907, 908 (E.D. Va. 2005) (citing *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)); *see Commonwealth ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 2015 WL 3540473, at *3 (E.D. Va. June 3, 2015) (noting the "gravity of the relief sought" in a request for interlocutory certification (internal quotations and citations omitted)).

The party seeking an interlocutory appeal must first demonstrate that the issue for which the party seeks certification constitutes a "controlling question of law." § 1292(b). "This element may be divided into two requirements: the question must be 'controlling' and must be one 'of law.'" *Integra*, 2015 WL 3540473, at *4. To be "controlling," the Court "must actually have decided [the] question" and resolution of the question must "be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Id.* (internal

quotations and citations omitted). Even if a question proves practically or legally controlling, the Court should certify the question for immediate appeal only if the question presents "'an abstract legal issue that the court of appeals [or, in this case, district court] can decide quickly and cleanly.'" *United States ex rel. Michaels v. Agape Senior Cmty.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016) (internal quotations omitted)). Courts should not certify interlocutory appeals when "the question presented turns on whether there is a genuine issue of fact or whether the [bankruptcy] court properly applied settled law to the facts or evidence of a particular case." *Id.* at 341 (internal quotations and citations omitted).

The party moving for interlocutory certification must also demonstrate that a "substantial ground for difference of opinion" exists as to the controlling question of law. § 1292(b). This "'substantial ground' . . . must arise 'out of a genuine doubt as to whether the [bankruptcy] court applied the correct legal standard.'" *Wyeth v. Sandoz, Inc.*, 703 F. Supp. 2d 508, 527 (E.D.N.C. 2010) (quoting *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007)). "[T]he mere presence of a disputed issue that is a question of first impression [in the Fourth Circuit], standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Flor v. BOT Fin. Corp (In re Flor)*, 79 F.3d 281, 284 (2d Cir. 1996) (per curiam). "Rather, it is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Id.* (emphasis supplied) (quotations and alterations omitted). An absence of unanimity on the question presented does not itself provide a substantial ground for difference of opinion. *Wyeth*, 703 F. Supp. 2d at 527.

Finally, the moving party must establish that certification "may materially advance the ultimate termination of the litigation." § 1292(b). Mere speculation regarding the potential pre-trial and trial expenses and effort to be saved by an interlocutory appeal does not satisfy this requirement. *Integra*, 2015 WL 3540473, at *5. Instead, the Court must examine whether "appellate review might avoid protracted and expensive litigation." *State ex rel. Howes v. Peele*, 889 F. Supp. 849, 852 (E.D.N.C. 1995). The Court should not permit "piecemeal review of decisions that are but steps toward final judgments of the merits . . ., because they can be effectively and more efficiently reviewed together in one appeal from the final judgments." *James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993).

Ultimately, district courts should adhere to the general principle that § 1292(b) constitutes "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Indeed, "[e]ven if the requirements of [S]ection 1292(b) are satisfied, the district court has 'unfettered discretion' to decline to [grant leave for] an interlocutory appeal if exceptional circumstances are absent." *Manion v. Spectrum Healthcare Res.*, 966 F. Supp. 2d 561, 567 (E.D.N.C. 2013) (citations omitted); *see also Estate of Nelco*, 250 B.R. at 78 ("In seeking leave to appeal an interlocutory order or decision, the appellant must demonstrate 'that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after entry of a final judgment.'" (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978))).

### III.   ANALYSIS

As mentioned, Rogers contends that the eight issues presented are ripe for interlocutory appeal, because all eight issues raise pure questions of controlling law over which a substantial ground for a difference of opinion exists and that will materially advance the termination of the

adversary proceeding below. (Rogers Mot. at 9-12.) Barrett responds that whether Rogers breached her fiduciary duties constitutes a question of fact that the Bankruptcy Court properly determined based on the undisputed facts before it and that the legal question of whether Rogers owed O. Lawrence a fiduciary duty lacks any substantial ground for a difference of opinion to justify an interlocutory appeal. (Barrett Resp. at 8-9.) Further, Barrett argues that no substantial ground for a difference of opinion exists as to Rogers' violation of the automatic stay, because all of the legal issues are clearly established. (Barrett Resp. at 10-11.) And Barrett avers that interlocutory appeal would create, rather than avoid, piecemeal litigation, because Rogers fails to demonstrate that interlocutory appeal would advance the termination of the adversary proceeding even if the Court ruled against her. (Barrett Resp. at 13-14.) The Court agrees with Barrett.

Indeed, some of the issues presented by Rogers are not pure questions of law that the Court "can decide quickly and cleanly." *Agape Senior Cmty.*, 848 F.3d at 340. For instance, in the first issue presented, Rogers asks the Court to address whether a substitute trustee's substantial compliance with a deed of trust's notice requirements precludes a finding of liability for breach of the trustee's fiduciary duties, a question that would require the Court to consider whether Rogers substantially complied with the Deeds of Trust, which in turn requires consideration of the factual record.

Likewise, the third issue presented — whether the Bankruptcy Court erred in granting summary judgment on the issue of whether Rogers took direction solely from O. Lawrence — does not ask the Court to address a purely legal issue but instead challenges the Bankruptcy Court's application of settled law to the facts, which proves inappropriate for interlocutory review. Indeed, "[c]ounsel's disagreement with the Court is simply not reason enough to grant an interlocutory appeal." *McDaniel v. Mehfoud*, 708 F. Supp. 754, 756 (E.D. Va. 1989). And

Rogers likewise raises mere disagreements with the Bankruptcy Court's application of settled law to the facts in asking the Court to address: (1) whether Rogers could be held liable for breach of her fiduciary duties for misstating the auction date in the Mailed Notice (the fifth question presented) and sending the Mailed Notice to O. Lawrence's last known address (the seventh question presented); and, (2) whether the Bankruptcy Court could rebut the presumption of Rogers' compliance with the notice requirements under the Deeds of Trust (the sixth question presented).

As to the remaining questions presented, Rogers fails to demonstrate a substantial ground for difference of opinion. For one, the fourth question presented — whether Rogers could be held liable for breach of her fiduciary duties for failure to provide proper notice, even though Virginia Code § 55.1-321(A) provides that the inadvertent failure to comply with the notice requirements in that statute shall not give rise to liability — mischaracterizes the Bankruptcy Court's decision. The Bankruptcy Court did not hold Rogers liable for her noncompliance with the notice requirements under § 55.1-321, but instead found her liable under the terms of the Deeds of Trust. *Barrett*, 2020 WL 2500628, at *5. Therefore, the language of § 55.1-321(A) proves irrelevant to Rogers' breach and fails to provide a basis for a difference of opinion as to that question. And Rogers' citation to similar language in Virginia Code § 55.1-321(C) under her second question for appeal proves equally unavailing, because, again, the Bankruptcy Court did not rely on that section to find Rogers in breach of her fiduciary duties.

As for the final question presented — whether the Bankruptcy Court can award punitive damages against Rogers — the Bankruptcy Court has reserved the damages question for trial, leaving that question unresolved. The Court will not take an interlocutory appeal of a question that the Bankruptcy Court has not resolved in the first instance.

Ultimately, Rogers fails to present a question ripe for interlocutory review. The questions presented are either factual in nature and thus not capable of resolution without delving into the record or are otherwise based on settled law that Rogers fails to challenge with any substantial ground for a difference of opinion. And, in any case, Rogers' arguments for how an interlocutory appeal will materially advance the termination of the adversary proceeding rely on the assumption that Rogers will succeed on the questions presented, ignoring the requirement that an interlocutory appeal advance litigation "regardless of its outcome." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, at *5 (4th Cir. 1989) (Table). Accordingly, the Court denies Rogers' Motion.

## IV.    CONCLUSION

For the reasons set forth above, the Court DENIES Rogers' Motion for Leave to Appeal (ECF No. 1). An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

\_\_\_/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: July 14, 2020

14